HERBERT BALL *vs.* CHARLES E. WEBSTER.

MAY 17, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J.   This is an action of the case in which the plaintiff, in his declaration, alleges in substance that while he was, in the exercise of due care, walking in an easterly direction across Main street, in the town of East Greenwich in this state, the defendant so negligently operated an automobile along that highway that it struck the plaintiff and severely injured him.

In a jury trial in the superior court the trial justice, at the conclusion of the evidence for the plaintiff, denied the

defendant's motion for a nonsuit; but at the conclusion of all the evidence he directed a verdict for the defendant upon the latter's motion therefor. The case is now before us on the plaintiff's bill of exceptions, in which the only exception that we find it necessary to consider is the one taken to the direction of a verdict for the defendant.

The accident happened a little before 11 o'clock, a.m., on September 10, 1934, and the account of it, as given by the plaintiff and his witnesses was as follows: He and two other men were, as laborers in the employment of the state board of public roads, engaged, with shovels and brooms, in sweeping up the gutters and cleaning out manholes on Main street, where it passes through the thickly-settled part of the business section of East Greenwich. They had with them a truck into which they were putting the refuse.

They began that morning at the armory, near the north end of the town, and in the course of their work they proceeded on foot in a southerly direction along the gutters on the west side of the street as far as Pierce street. For both the northern and southern ends of the section of Main street in which these men were working during that forenoon there were warning signs about two feet square, painted yellow, with black letters on them saying "Caution! Men Working on Road." These were set upright, resting on the pavement. One was some distance north of the north end of the section in which the work was going on during that morning and was set up in the street near the west side and faced towards the north. The sign for the south end of the section was set up in the street near the east side and faced south. It was a little north of the A. & P. store, which was just about 200 feet south of the south end of the section.

There was a big white sign above the highway, hanging on a cable stretched across from one side to the other, and facing south. It was there at the time of the accident and also when the jury took a view of the scene of the accident.

The plaintiff testified that it read: "Not over twenty miles per hour." One of his witnesses, who took measurements, testified that there was a good-sized sign which he thought was over the east lane of the highway and which faced south and read: "20 Miles an Hour". This sign was 283 feet south of London street, which came into the east side of Main street a few feet north of the place of the accident. Main street at that place was about 45 feet from curb to curb. It was divided into four lanes of about equal width, which were separated from each other by clearly-marked, white lines.

When the plaintiff and the other two men working with him had cleared the gutters on the west side of the street, as far as the section's southern boundary at Pierce street, which enters Main street from the west but does not cross it, and is very nearly 20 feet wide, the three laborers started to walk across Main street, in order to resume their work of cleaning the gutters on the east side from the south end of the section to the north end. The sign that men were working was on the most eastern lane of the street, further south, and facing towards the south.

As the three laborers walked towards the opposite gutter on Main street, they were in single file a very few feet apart, the plaintiff being the last man. They were not going quite straight across, but slanted a little towards the north, because London street, the southern limit on the east side of Main street, of the section in which they were working, came into that street a little farther north than did Pierce street.

According to the plaintiff's own testimony, he looked to the north before he started to cross over Main street from the first lane on the west side, where he had been helping to clear the gutter. He saw no car coming from that direction. He next looked to the south and saw one car about

in front of the Catholic church, 400 or 500 feet away, and coming north. Then he started to cross the street.

When he reached its middle line, he again looked north and then south and saw the same car still coming north and at that time between the A. & P. and the First National stores, the former being 200 feet from London street and the latter about 50 feet farther away, according to his estimate. He later said the car was then probably about 250 or 260 feet away. He kept on walking across the street, quickening his pace, and was struck by the right front corner of the same car, when he was just stepping into the fourth lane. He was thrown into the air, came down on the right fender of the car and was carried along, hanging onto it, for about 30 feet when the car stopped "with a sudden snap", as one witness said, and the plaintiff fell off.

He testified that when he looked at the car, as he was just crossing the center line of the street, it was "straddling" the most eastern line of the street; that he thought it was coming "pretty fast" but was far enough away so that he could get across into the fourth lane, where the men's work was to be done; and that he therefore just walked faster and kept going. He said that it was a built-up section and the cars were supposed to slow up there; and in substance he also stated that he did not want to stand in the middle of the street, as that was a dangerous position.

Several witnesses for the plaintiff testified that they came up to the car very soon after it stopped and saw, on the street, skid marks leading up to the rear tires of the car. One witness said that they were about 25 or 30 feet long, and another said 15 to 20, and still another 5 to 7. One of these men testified also that the defendant then told him that he had not seen the plaintiff; and the plaintiff testified that no horn was sounded before he was hit.

The defendant and some of his witnesses told a very different story of how the accident happened, a story which,

if believed, would justify the jury in finding a verdict for the defendant. But in passing upon a motion for the direction of a verdict for the defendant, it was the duty of the trial justice to view all the evidence most favorably to the plaintiff.

On such a view there was clearly evidence from which the jury could reasonably find that the defendant negligently ran his car against the plaintiff. The decisive question for us to consider is whether the plaintiff was guilty of negligence *per se,* or whether, on the contrary, there was evidence from which the jury could reasonably find that he was in the exercise of ordinary care for his own safety, when, after looking to his right, as he walked across the white line in the center of Main street, and seeing the plaintiff's car between 200 and 250 feet away and coming towards him at a "pretty fast" rate of speed, he did not stop but simply increased his speed of walking towards the gutter in front of him, because in his judgment he could thus cross in safety without being struck by the car.

In our opinion the jury would have a right, under the circumstances of this case, to apply the rule that a pedestrian, in deciding whether or not to walk across a street or any portion of it, in front of an approaching vehicle, which is not so close and moving at such speed as to make a collision unavoidable if the pedestrian does so walk across, has the right to take into consideration the probability that the driver of the vehicle will use reasonable care on his part to avoid such a collision. *Chagnon* v. *United Electric Rys. Co.,* 61 R. I. 275, at 280, 200 A. 949, at 952, and cases there cited.

Applying that doctrine in this case, we are of the opinion that the plaintiff was not guilty of negligence *per se,* but that whether or not he was in the exercise of reasonable care under these circumstances was a question for the jury; and that the trial justice erred in directing a verdict for the defendant.

The plaintiff's exception to the direction of a verdict for the defendant is sustained, and the case is remitted to the superior court for a new trial.

*Edward H. Ziegler, George K. Demopulos,* for plaintiff.

*James O. Watts, James O. McManus,* for defendant.